```
             THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| HAROLD L. WRIGHT, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 07-0344 (JBS) |
| v. | |
| UNITED STATES OF AMERICA, | **OPINION** |
| Defendant. | |

APPEARANCES:

Mr. Harold L. Wright
#32803-037
FCI Terre Haute
P.O. Box 33
Terre Haute, Indiana 47808
     Plaintiff pro se

CHRISTOPHER J. CHRISTIE
United States Attorney
By:  Susan J. Steele
     Assistant United States Attorney
970 Broad Street
Suite 700
Newark, NJ 07102

**SIMANDLE**, District Judge:

This matter comes before the Court upon the motion of Defendant, the United States of America, to dismiss pro se Plaintiff Harold L. Wright's claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C §§ 1346(b) et seq., pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff's Complaint alleges that he experienced physical and emotional damages as a result of improper diagnoses and treatment by two Bureau of Prisons ("BOP")

medical departments, specifically, Federal Correction Institution ("FCI") Fairton in Fairton, New Jersey and FCI Ray Brook in Ray Brook, New York [Docket Item 1]. The Government contends that Plaintiff's failure to file an affidavit of merit pursuant to New Jersey's Affidavit of Merit Statute results in a failure to state a cause of action and therefore, that Plaintiff's claim should be dismissed in its entirety. (Def. Br. at 6.) This dispute requires the Court to conduct a choice of law analysis to determine if the New Jersey Affidavit of Merit Statute applies to the case at bar, since the Complaint alleges acts or omissions in two separate states. For the reasons discussed herein, the Government's motion will be denied.

**I.    BACKGROUND**

   **A.    Facts**

Plaintiff, a pro se prisoner presently lodged in Indiana, claims he suffered physical and emotional damages as the result of actions by two BOP medical departments, FCI Fairton in New Jersey and FCI Raybrook in New York. (Compl. ¶ 8.) While Plaintiff was incarcerated at FCI Fairton, he was treated by the institution's medical doctor, Dr. Morales, for foot pain. Plaintiff alleges that Dr. Morales concluded Plaintiff's foot pain was due to a fracture that had improperly healed and the doctor issued a "shoe pass," which allowed Plaintiff to wear shoes other than those issued by the institution. (Id. ¶ 12.)

Plaintiff also contends Dr. Morales recommended Plaintiff not place any pressure on his foot and avoid physical activities such as jogging and basketball.  (Id. ¶ 13.) Plaintiff claims he followed Dr. Morales' recommendations and limited his physical activity, which resulted in weight gain, high blood pressure and high cholesterol. (Id. ¶ 14.)

Plaintiff was then transferred to FCI Raybrook where he met with Dr. Dawn Marini, who reviewed and continued Dr. Morales' treatment plan. (Id. ¶ 15.)  Dr. Marini issued another shoe pass to Plaintiff and continued to treat Plaintiff for high blood pressure, high cholesterol and weight gain. (Id. ¶ 16.) Plaintiff contends Dr. Marini also advised Plaintiff to refrain from physical activity that would place pressure on his feet. (Id. ¶ 16.)

Plaintiff was then transferred to FCI Beckley in West Virginia where he met with that institution's clinical director. (Id. ¶ 17.)  This clinical director allegedly informed Plaintiff he had no foot problems and could resume his physical activity. (Id.)  Plaintiff contends that since he resumed his physical activity, he has regained control over his high blood pressure, weight and cholesterol problems.  (Id. ¶ 22.) Plaintiff claims he suffered physical and emotional damages as a result of the alleged improper diagnoses and treatment plans of Dr. Morales at FCI Fairton and Dr. Marini at FCI Raybrook.  (Id. ¶ 26.)

## B. Procedural History

Before filing suit in this action, Plaintiff filed an Administrative Tort Claim within the institution at FCI Beckley on November 3, 2003. (Compl. ¶ 2.) The Administrative Tort Claim was denied on April 20, 2004 and Plaintiff filed the instant action in the District Court of the Southern District of West Virginia on September 14, 2004 against Troy Williams, Warden [Docket Item 1].

The Government moved on September 15, 2005 to dismiss defendant Troy Williams and substitute the United States as defendant [Docket Item 9]. On November 2, 2005, the Government moved to transfer venue to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1391(e) [Docket Item 13]. The motion was granted in the interest of justice and the case was transferred to this Court under 28 U.S.C. § 1406(a) on January 22, 2007 [Docket Item 20]. On January 25, 2007, the Government's motion to dismiss Troy Williams as defendant and substitute the United States was granted [Docket Item 22]. The Government filed its answer to the Complaint on May 21, 2007 [Docket Item 24].

On October 31, 2007, the Government filed the instant motion for dismissal for failure to state a claim for which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) [Docket Item 33].

The Government argues that Plaintiff's claims must be dismissed on account of his failure to file an affidavit of merit in accordance with New Jersey's Affidavit of Merit Statute. (Def. Br. at 6.) New Jersey's Affidavit of Merit Statute requires a plaintiff to file an affidavit of merit within 60 days of defendant's filing of an answer in any action which alleges negligence or malpractice by a licensed person in his profession or occupation. N.J. Stat. Ann. § 2A:53A-27. Failure to file an affidavit is deemed a failure to state a cause of action. N.J. Stat. Ann. § 2A:53A-29. To date, Plaintiff has not filed an affidavit of merit in compliance with § 2A:53A-27, nor has Plaintiff filed any opposition to this motion.

## II. DISCUSSION

### A. Standard for F. R. Civ. P. 12(b)(6) Motion to Dismiss

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

> While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a

right to relief above the speculative level."
Phillips, 515 F.3d at 234. "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-1965 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. [Twombly, 127 S. Ct. at 1965 n.3.] This "does not impose a probability requirement at the pleading stage, but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id.

Phillips, 515 F.3d at 234. Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint are taken into consideration. Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

### B. Choice of Law Analysis under the Federal Tort Claims Act

The Government has moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), arguing that under the FTCA, New Jersey law should apply to this case since the "Court applies the law of the state where the alleged tortious conduct occurred" and "New Jersey's affidavit of merit statute is applicable to suits in federal court."[1]  (Def. Br. at 5.)  As the Government argues, under New Jersey law, a plaintiff is required to file an affidavit of merit pursuant to New Jersey's Affidavit of Merit Statute within 60 days of defendant's filing of an answer, and the failure to file such an affidavit results in a failure to state a cause of action.

"The Federal Tort Claims Act waives sovereign immunity against persons suing the federal government for commission of various torts." <u>Simon v. United States</u>, 341 F.3d 193, 199 (3d Cir. 2003).  The Act grants district courts jurisdiction over tort claims against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  In multi-state tort

---

[1] The Preliminary Statement of Defendant's Brief states that the alleged acts or omissions complained of took place at the Federal Correction Institution in Fort Dix, New Jersey.  This is inaccurate as Plaintiff was not incarcerated at FCI Fort Dix and Plaintiff's Complaint clearly alleges acts or omissions by Dr. Morales at FCI Fairton in New Jersey and by Dr. Marini at FCI Raybrook in New York.

7

actions brought pursuant to the FTCA, the federal district court must apply "the whole law," including the choice of law rules, where the act or omission occurred. Richards v. United States, 369 U.S. 1, 10-11 (1962). Plaintiff's Complaint alleges acts or omissions in both New Jersey and New York. (Compl. ¶ 8.)[2]

The Court of Appeals explained the procedure for determining "the law of the place where the act or omission occurred" in multi-state tort claims in Gould Electronics, Inc. v. United States:

> Because Richards interpreted the "law of the place where the act or omission occurred" to mean the "whole law" of the state where the act or omission occurred, including that state's choice of law rules, a two step choice of law analysis is required when multiple acts or omissions have occurred in more than one state. First, the court must select between the states' respective choice of law rules. Second, the court must apply that state's choice of law rules to determine which state's substantive tort law applies. Because of this bifurcated analysis, the state whose choice of law rules are selected in the first step may or may not be the same state whose substantive law is chosen in the second step.

220 F.3d 169, 180 (3d Cir. 2000) (citations omitted). In selecting between the states' choice of law rules, the Court must "apply the choice of law regime of the jurisdiction in which the

---

[2] The Government appears to have overlooked the multi-state nature of Plaintiff's claim, and did not engage in a choice of law analysis before applying New Jersey Law. Instead, Defendant treated Plaintiff's claim similar to a diversity action by citing Chamberlain v. Giampapa, 210 F.3d 154 (3d Cir. 2000), rather than treating it as a multi-state claim pursuant to the FTCA which is subject to a choice of law analysis.

last significant act or omission occurred." Simon, 341 F.3d at 204.

Initially, the Court must determine whether there is a "false conflict" in the underlying choice of law rules or the underlying substantive laws of New Jersey and New York. See Gould, 220 F.3d at 180. As the following discussion makes clear, there is a true conflict between the two jurisdictions' choice of law rules and affidavit of merit statutes.

**1. New Jersey and New York's Choice of Law Rules**

First, it is clear that New Jersey and New York employ different choice of law rules. New Jersey employs a government interest analysis which focuses on the governmental policies underlying the legislation at issue to resolve conflicts of law. If there is a conflict between the laws of the interested states, New Jersey applies the law of the state with the greatest interest in the disputed issue. Rowe v. Hoffman La-Roche, Inc., 917 A.2d 767, 771 (2007). New Jersey determines government interest by identifying the governmental policies underlying the law of each state, and then determining whether those policies are affected by each state's contacts to the litigation and to the parties. Id.; Veazey v. Doremus, 510 A.2d 1187, 1189 (1986). "If a state's contacts are not related to the policies underlying its law, then that state does not possess an interest in having its law apply." Veazey, 510 A.2d at 1189-1190.

9

In contrast, New York's choice of law analysis does not center on governmental policies at the base of a statute, for the reason that:

> it is frequently difficult to discover the purposes or policies underlying the relevant local law rules of the respective jurisdictions involved. It is even more difficult . . . to determine on some principled basis which should be given effect at the expense of others.

Neumeier v. Kuehner, 286 N.E.2d 454, 457 (1972). Rather, New York focuses its choice of law analysis by looking at a jurisdiction's significant contacts with the litigation. Padula v. Lilarn Properties, Corp., 644 N.E.2d 1001, 1002 (1994); Babcock v. Jackson, 191 N.E.2d 279, 283 (1963); K.T. v. Dash, 827 N.Y.S.2d 112, 116 (N.Y. App. Div. 2006). New York looks chiefly at two factors in determining the significance of a jurisdiction's contacts to the litigation: the locus of the tort and the parties' domiciles. Schultz v. Boy Scouts of America, Inc., 480 N.E.2d 679, 684 (1985). "The law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." Babcock, 191 N.E.2d at 283.

New York further divides its choice of law analysis by determining whether the purpose of the law is to regulate conduct or allocate losses. Babcock, 191 N.E.2d at 285; Padula, 644 N.E.2d at 1002. The New York Court of Appeals explained:

> An immediate distinction was drawn between laws that

10

>    regulate primary conduct (such as standards of care)
>    and those that allocate losses after the tort occurs
>    (such as vicarious liability rules).  If conflicting
>    conduct-regulating laws are at issue, the law of the
>    jurisdiction where the tort occurred will generally
>    apply because that jurisdiction has the greatest
>    interest in regulating behavior within its borders.
>    But if competing "post event remedial rules" are at
>    stake, other factors are taken into consideration,
>    chiefly the parties' domiciles.

Cooney v. Osgood Machinery, Inc., 612 N.E.2d 277, 280 (1993) (quoting Schultz, 480 N.E.2d at 686; Babcock, 191 N.E.2d at 284-285).

It is thus clear that there is a true conflict between New Jersey and New York's choice of law rules.  New Jersey determines government interest by analyzing the underlying governmental polices of each state's statutes and whether those policies are affected by a state's contacts to the litigation.  In contrast, New York focuses its choice of law analysis primarily on the location of the tort and the parties' domiciles.  New York also divides its choice of law analysis based on whether the statute at issue is regulating primary conduct or allocating losses after the tort has occurred.  New Jersey has no such division.  In light of these differences, the application of each state's respective choice of law rules could lead to different substantive outcomes in the instant action.  Specifically, New York's analysis would include consideration of the plaintiff's domicile's interest in the litigation whereas New Jersey would restrict its analysis to New Jersey and New York's underlying

11

governmental policies of their respective statutes.[3]  Therefore, a true conflict exists between New Jersey's choice of law rules and New York's choice of law rules.

### 2. New Jersey and New York's Affidavit of Merit and Certificate of Merit Statutes

Having determined there is a true conflict between New Jersey's and New York's choice of law rules, the Court must next determine if there is a conflict between the competing jurisdictions' substantive law requiring an affidavit of merit in medical malpractice cases.  Gould, 220 F.3d at 180.

New Jersey's Affidavit of Merit Statute, § 2A:53A-27, requires that an affidavit of merit from a licensed physician be filed by the plaintiff 60 days after the defendant's answer is filed.  Failure to file an affidavit of merit constitutes a failure to state a cause of action pursuant to New Jersey Statute § 2A:53A-29.  There is no exception for pro se plaintiffs in the statute, and courts have not interpreted the statute to have an exception for pro se prisoners.  See Caines v. Hendricks, No. 05-

---

[3] The two statutes at issue, the affidavit of merit and the certificate of merit provisions, ultimately have the same underlying governmental policy, which is the prevention of frivolous medical malpractice suits.  New York's choice of law analysis, however, would also consider the interest of the plaintiff's domicile in making certain its domiciliaries are fully compensated for injuries suffered in a foreign jurisdiction.  New Jersey would not consider the interest of the plaintiff's domicile since the statutes' underlying policy of weeding out frivolous claims at an early stage in the judicial process is not related to the domicile's contact to the litigation.

12

1701, 2006 WL 3733275, *1 (D.N.J. Dec. 15, 2006); <u>Bramson v. Sulayman</u>, 251 Fed. Appex. 84, 85-86 (3d Cir. 2007). The affidavit of merit statute is treated as a substantive, not procedural, requirement. <u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 161 (3d Cir. 2000).

New York requires a certificate of merit from the plaintiff's attorney to accompany a complaint in any action for medical, dental or podiatric malpractice under N.Y. C.P.L.R. § 3012-a. Critically, the statute has an exception in subsection (f), which states that "[t]he provisions of this section shall not be applicable to a plaintiff who is not represented by an attorney." N.Y. C.P.L.R. § 3012-a(f). Equally important is the fact that failure to file a certificate of merit does not result in dismissal of the suit; rather, the proper sanction is to afford plaintiff time to comply with the statute. <u>Finnegan v. University of Rochester Medical Center</u>, 180 F.R.D. 247, 249 (W.D.N.Y. 1998). New York also treats the certificate of merit statute as substantive, not procedural. <u>Id.</u>

Since this case is brought by a <u>pro se</u> plaintiff, the difference between the two states is significant and outcome determinative. That is, the Complaint of a <u>pro se</u> plaintiff who fails to file an affidavit of merit in New Jersey is subject to dismissal for failure to state a claim, whereas the failure to file a certificate of merit under New York law is not cause for

13

dismissal if it is remedied.  Therefore, there is a true conflict between New York and New Jersey's substantive law regarding an affidavit and certificate of merit.

### C. Bifurcated Choice of Law Analysis under the Federal Tort Claims Act

Having determined there is a true conflict between New Jersey's and New York's choice of law rules as well as their respective affidavit of merit and certificate of merit statutes, the Court must next engage in a bifurcated choice of law analysis.  Gould, 220 F.3d at 180.  First, the Court must select between New Jersey and New York's choice of law rules.  Id.  Second, the Court must apply the selected choice of law rules to determine which state's substantive law is applicable.  Id.

#### 1. Selection of Choice of Law Rules

The Court finds it must apply New York's choice of law rules in this case.  When faced with making a selection between conflicting choice of law rules in multi-state FTCA actions, the Third Circuit has instructed district courts to "apply the choice-of-law regime of the jurisdiction in which the last significant act or omission occurred." Simon, 341 F.3d at 204.  According to Plaintiff's Complaint, the last act or omission occurred in New York while Plaintiff was incarcerated at FCI Raybrook and was treated by Dr. Marini.  (Compl. ¶ 16.)  Therefore, in accordance with Simon, New York choice of law rules will be applied to determine which state's substantive affidavit

14

of merit or certificate of merit statute is applicable to the instant action.

### 2. New York's Choice of Law Rules

Under New York's choice of law analysis, the threshold question is whether New Jersey's Affidavit of Merit Statute and New York's Certificate of Merit Statute are loss-allocating or conduct-regulating rules.  Loss-allocating rules are differentiated from conduct-regulating rules "with the explanation that loss-allocating rules are applicable once there is admittedly tortious conduct, while conduct-regulating rules are those people use as a guide to governing their primary conduct."  K.T. v. Dash, 827 N.Y.S.2d at 112.  If the statute is regulating primary conduct, such as rules of the road, the law of the jurisdiction where the tort occurred will generally apply.

> The locus jurisdiction's interest in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance and outweigh any interests of the common-domicile jurisdiction.

Schultz, 480 N.E.2d at 684-685.  In contrast, if the statute is loss-allocating, the chief factor becomes the parties' domiciles.  Cooney, 612 N.E.2d at 280.  The New York Court of Appeals explained:

> Under those circumstances, the locus jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the remedy in an action by a foreign domiciliary for injuries

>      resulting from the conduct of a codomiciliary that
>      was tortious under the laws of both jurisdictions.
>      Analysis then favors the jurisdiction of common
>      domicile because of its interest in enforcing the
>      decisions of both parties to accept both the
>      benefits and the burdens of identifying with that
>      jurisdiction.

Schultz, 480 N.E.2d 679 at 685.

The Court finds that the affidavit of merit and certificate of merit statutes are loss-allocating rules.  The New York Court of Appeals distinguishes conduct-regulating rules as laws aimed at governing primary conduct "which have the prophylactic effect of governing conduct to prevent injuries from occurring," as distinct from loss-allocating rules, which are post-event remedial rules designed to "prohibit, assign or limit liability after the tort occurs."  Padula, 644 N.E.2d at 1002-03.  The affidavit of merit statute and certificate of merit statute have no "prophylactic effect of governing conduct to prevent injuries from occurring."  Padula, 644 N.E.2d at 1002.  Rather, they are both statutes that apply after the tort has occurred and have the effect of prohibiting liability if the medical malpractice alleged is frivolous.  Newell v. Ruiz, 286 F.3d 166, 170 (3d Cir. 2002).  Therefore, the Court classifies New Jersey's Affidavit of Merit Statute and New York's Certificate of Merit Statute as loss-allocating rules.[4]

---

[4] The only case from the State of New York to specifically address affidavit of merit statutes in a choice of law analysis is consistent with this Court's holding.  In Kehrley v. Valley Hospital, the court held these statutes were loss-allocating

### 3.  **The Government's Motion**

Because the affidavit of merit statutes are loss-allocating rules, the parties' domiciles are an indispensable consideration for the choice of law analysis under New York law.  See Cooney, 612 N.E.2d at 280.  Plaintiff's domicile is not evident on the face of the Complaint (nor, for that matter, from any other materials in the record).  The Government thus has failed to establish that "under any reasonable reading of the complaint," Plaintiff is not entitled to relief.  Phillips, 515 F.3d at 231. To the contrary, New Jersey's Affidavit of Merit Statute would appear to apply to Plaintiff's Complaint under this choice of law analysis only if he is a New Jersey domiciliary, a fact which cannot be discerned from the Complaint.  The Court will accordingly deny the Government's motion to dismiss.

The Government may, of course, raise its Affidavit of Merit arguments in a motion for summary judgment with factual submissions sufficient for the Court to ascertain Plaintiff's domicile.  Moreover, while it cannot at this stage be determined which state's substantive law will govern Plaintiff's malpractice claims, Plaintiff would obviously have to come forward with

---

because they "share the characteristic of being 'post event remedial rules designed to allocate the burden of losses resulting from [tortious] conduct.'"  Kehrley, No. 125/00, 2001 WL 1422155, *4 (N.Y. Sup. Ct. Aug. 29, 2001) (quoting Schultz, 480 N.E.2d at 686).

evidence demonstrating that a deviation from the applicable standard of medical care caused his injuries in response to a motion for summary judgment by the Government.

### III. CONCLUSION

For the reasons explained above, the Court will deny the Defendant's motion to dismiss.  The accompanying Order will be entered.

| | |
|---|---|
| **June 27, 2008** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | United States District Judge |